And if both attorneys that are going to argue would step up and identify yourselves for the record. My name is Miriam Sirig. I'm from the State Appellate Defender's Office for Mr. Shaw. Ms. Sirig? Yes. Good morning. Good morning, Your Honors. My name is John Nowak. I'm Assistant State's Attorney here on behalf of the people. Mr. Nowak, good morning. Now, both of you will have approximately 15 minutes to present your oral and from there, Ms. Sirig, you may save up some time for rebuttal. All right? Okay. So if I can have two minutes for rebuttal? Surely. Good morning again. Good morning. May it please the Court, counsel? This Court should remand Jermaine Shaw's petition for an evidentiary hearing because he has made a substantial showing of actual innocence when he presented an affidavit from Andrew Coe, which demonstrates that the complainant recanted her identification of Mr. Shaw as the person who sexually assaulted her and named the true perpetrator as an acquaintance of hers, Anthony Benjamin. So there are three steps here. The evidence is newly discovered under the Ortiz standard. This evidence, this affidavit, comes after the guilty plea and there is no indication that with any due diligence Mr. Shaw could have found out about this affidavit any time earlier. And in the second step, this is material evidence that's not cumulative. It shows that Mr. Shaw didn't commit the crime that he pleaded guilty to and this evidence has never been presented before. Are you – you know, the State is suggesting that in the petition you've weighed certain arguments. But is your primary argument that the plea was involuntary because of the actual innocence or are you claiming something else? What we're really claiming is that Mr. Shaw has stated a claim of actual innocence and as part of that actual innocence claim, he has stated a claim that his guilty plea was also coerced. And they really go together. So we really say both. And I think our opening brief really brings that out. We say he's stated a claim of actual innocence and part and parcel of that claim of actual innocence is the claim that his guilty plea was coerced. And he alleges both in his petition. And so that waiver claim I don't think holds water. What about the cases that say, first of all, this is a little bit different than a lot of post-conviction petition appeals. We see because it involves a plea of guilt. And there is some case law. I don't think the Illinois Supreme Court has really talked about this as much. But there are a couple of appellate court cases that suggest that the only way you can attack a guilty plea on a post-conviction petition is to challenge the voluntariness of the plea. That's the vehicle by which you have to attack in order to actually have a claim. Because when you plead guilty, you actually give up voluntarily constitutional rights. And really the only thing you don't give up is a claim that the court lacked jurisdiction. So the two cases that you're referring to are Barnsleyer and then Knight, the case that we cited. Yes. So I agree. And what I would say is that Mr. Shaw did that just here. So he said my guilty plea was coerced because my attorney threatened to withdraw. And my underlying confession was coerced from police who beat me at the police station, from the police station. And they told me that I was going to be killed in jail. So he alleged these claims in his petition. And we restated those claims in our appeal as well. Did the Supreme Court in her specific ruling say that you forfeited both of those? Well, this is de novo review, for one thing. But I don't see that. Well, she argues that you have forfeited or procedurally defaulted. I don't think that is correct, though, because we argued in our opening brief there's a claim of actual innocence. And that claim is not forfeited. That's actually we say that in our brief because he's also stated a claim that his guilty plea was coerced and that it was involuntary because there are also other parts about that guilty plea that should be on the record. So are you saying now that we could actually review his claim that his statement was coerced? I think that's definitely something they argue is well gone. That, what we're arguing is that that is a claim that could go to the evidentiary hearing just as much as the actual innocence claim because they're all part of the same claim. He says he's actually innocent. And he says that his guilty plea was coerced. And if I can point you to the But as a freestanding claim, it would be time barred, right? What's that? But as a freestanding claim, it would be time barred. Time barred as a, the guilty plea? No, not the guilty plea, the confession. The confession, yes. But it's all part of that same claim. When you were going through the test and explaining how your evidence satisfies the test, we didn't quite get to the last problem, which was it would change the outcome on retrial. Right. So there was no trial. There was no trial. Okay. And so how do we square this? I mean, this is in some ways kind of a, I don't mean to be glib, but kind of a free shot on goal for you because there's no state evidence because they were never required to do it because of the guilty plea. So pretty much anything you put up is going to be going up against nothing on the other side. Does that suggest that maybe this is kind of a square peg in a round hole with your claim in the Post-Conviction Act? Well, I was What are we to do with this? Well, so we have an opportunity here to review at least the claims that Mr. Shaw has made, and we can look at the corroborating evidence of those claims, and we can see that he made, stated a full claim of actual innocence that you can review. We can review the affidavits. We have them here, and we can send this to an evidentiary hearing. With what standard? With the standard in Ortiz. Without the last part? Of the trial. Really? Well, that's I mean, that's the toughest part to overcome usually, right, is that it would have made a difference in the trial, and there was no trial. Right. But we So wouldn't we examine the plea proceedings and use that evidence to determine your test? New material? Well, and we have the factual basis that the State presented here, so we have that to go off for now. So you would agree that we could actually use the record of the plea proceedings? Yeah, absolutely, because that's what we have. There's a written statement in addition to her identification, but let me ask you this. There's another procedural question I have. I don't really recall reading any case, and you maybe can help me out, where a person is actually moving, so to speak, in a post-conviction petition to sort of vacate half of You do know there was another plea of guilty in which he admitted a home invasion charge, and that's actually part of this whole case. Now, no one, I don't even say just you, but even the State, no one's really talking about that in the briefs. So how, what is the procedural mechanism by which someone can move for a hearing on a post-conviction plea when they're challenging half of the plea and not the other half? Well, I think we will have to admit that if this goes away, then the entire guilty plea goes away. I don't think this is Well, how could that possibly be? He's not even challenging his other plea. He is challenging the entirety of his guilty plea. He says I mean, I beg to differ. I would have to say that there's nothing in these briefs that you or even the State has suggested or even discussed this, what I would call morass that is being raised here, that he's saying I'm actually innocent of this part of my plea. On the other hand, there's nothing anywhere in this record where he's saying I'm not, I'm actually innocent of the home invasion from Schomburg that I pled guilty to at the same time. But he does say that he was forced to plead, and that is the entirety of the plea, by his attorney's threats to withdraw. So he does say that. Okay. I don't, I'm just really struggling with this notion because there is nothing in here that suggests he's moving to vacate his guilty plea because since he was forced or in some way he's innocent of the one, that therefore the whole plea is invalid, and therefore he states a claim for a denial, a substantial denial of his constitutional rights. I just think it's an issue, and I don't really think that it's really discussed here, and yet it's like the element in the room. He pled guilty. There's two different, there's three informations. He has pled guilty to one. There's absolutely no challenge at any time to this other plea of guilty, and you know, I don't know how the parties suggest we address that. Let me ask you this. Is that because of the lawyering in the case? There's an ineffectiveness of counsel where you should have done that? On the guilty plea? He did not raise that, and I don't think we can speak to this at this point. He raised ineffectiveness of counsel at some point in his guilty plea, in his petition, but I don't think it goes to that. Was he under such influence of narcotics that he really didn't even know what he was doing? Well, that is one of the claims, and I was going to get to that, that he undermined guilty plea proceedings. Here, clearly, a very problematic because he comes in, and the state meets the factual basis, and he says, I didn't do none of that. Yeah, and then it was continued. It was continued. And he came back. And you're familiar with an Alford plea, are you not? Am I what? Familiar with an Alford plea coming out of the U.S. Supreme Court? Yes. One of the, okay. And is your, are you aware that, or what is your position on whether an Alford plea is available, alive and well, under Illinois state law? I would have to. Well, basically, it essentially says that, and we do have Illinois case law, it says that when someone pleads guilty, and they have protestations of innocence, you know, that it's still a guilty plea. Now, would I ever accept a guilty plea where someone says on one day, you know, I don't know what I was doing. I really don't have any idea. I was, you know, on drugs. I have mental issues. Would I accept the guilty plea? Would these judges here necessarily accept that guilty plea? Probably not. But then again, this case was continued. And it comes up a week later, and then the protestations are not present. The judge accepts the guilty plea and sentences him on these two cases. So, you know, I mean, there's just some really thorny issues here that I don't know that anybody has envisioned. You see, what's been given to us is not as helpful as it should be. And, you know, our ultimate job is we don't want a man in prison if he is innocent on the one hand. That's correct. But on the other hand, there has to be a vehicle, you know, to show us under the law how we could do that. But I think that night really speaks to that vehicle, right? In night, we have the allegation of an involuntary guilty plea and an allegation of actual innocence to be determined, and that's what night holds at an evidentiary hearing. And that's exactly what we have here. But night didn't involve this very peculiar situation where someone actually pled guilty to three different informations, and they are not or inform, they're claiming this one over here is informed. I was now putting that aside, which is, you know, we could perhaps order or allow the parties to prove this. To brief this issue. I was going to suggest that we can discuss that with ourselves or amongst ourselves. But here's another question I have for you. And it involves the other issue. At the guilty plea, there is the, you know, the testimony that is given, and that's another issue, is what do we do, what do we compare, because we don't have a trial. But here's the other issue I want to ask you about, and that is the Supreme Court rule that says that hearsay evidence is invisible at an evidentiary hearing. Now, if we accept that and say, yes, you can have hearsay at an evidentiary hearing, we have the claim of an actual innocence proceeding, and we have the fourth prong that it's so conclusive it's likely to change the outcome. So if you have this hearsay and then you have this conclusive rule, my question to you is, there seems to be a contradiction, but are you aware of any exception to the hearsay rule where a deceased person, we all agree she died. Yes, she actually died before the plea of guilty. Everybody apparently knew that. But are you aware of any exception to any hearsay rule that would allow Mr. Koh to testify to a statement of a deceased person? In this particular case, it might come in under Rule 804B3F, so she's deceased. And then if she actually pointed out the wrong person at the police, knowingly pointed out the wrong person and subjected herself potentially to obstruction of justice charges because she is now leading the investigation in the wrong way, then that might come in. And, again, I think that's where the evidentiary hearing might come in because it would give Mr. Koh. Are you aware of any case anywhere in the United States regarding a deceased person's statement that would come in under that rule? So I actually looked a little bit, and I did not come up with a particular good case. I did come up with an unpublished case here in Illinois where the idea of an obstruction of justice charge as a – I think that's right – where there was an – where the idea was that an obstruction of justice in an investigation is a statement of – is a statement against interest where you're making the wrong statement in an investigation, and that would subject you to obstruction of justice charges. And then the deceased, that's just part of Rule 804B3, and I think we can just go off the rule here for now, which says the person in the declarant is deceased, she's making a statement against her penal interest, and then the third part are the circumstances under which the statements were made and the corroborating circumstances and the trustworthiness. But that really is something to be discussed at the evidentiary hearing. Well, because that depends on the – The theory would be the recantation was a statement against interest because she was admitting to her friend that she had falsely identified somebody. Right. That would be one. But again, and I think if I want – if we want to look at one, which this court authored, that's exactly what the court said there. These kinds of determinations get really pushed to the evidentiary and they're not made at the second stage. And that's what we're saying here. Weren't there multiple witnesses, though, in that case? There were three hearsay statements. Didn't they involve admissions? They involved – yes. Justice Ellis wrote that and I wrote my dissent. Right. But – It is a little different. It's a little different. But what's really the same is that there's fully – what we have here is a statement that potentially fully exonerates Mr. Shaw. And we have – Is it really a statement that fully exonerates him? It names the actual perpetrator of – Or is it really impeachment? Anthony Benjamin. Is it really impeachment or like a recantation? It's really a claim of innocence because we have another person who she said and somebody that she actually knew committed the offense. So it's an acquaintance. Okay. Let me ask you this. You're familiar with the plea guilty proceedings, correct? With these, yes. Yes. Okay. And so there was evidence presented that there were two – multiple offenses. And one of them you could say might become evidence of other crimes. It was a second home invasion. It involved a robbery in a home. And the defendant was actually arrested, I believe, driving the car that was stolen from this other woman. Okay? And then you have the plea of guilty to the sexual assault, home invasion of the deceased woman. And in addition to – Now, the woman in the Schomburg home invasion identified him as the perpetrator. At the plea, that's one of the pieces of evidence that is set out on the record. And that he was arrested driving her car that was taken in her home invasion. Then you have the other evidence that was presented regarding this offense in which there was evidence presented about the sexual assault that he had come to the home twice. She identified him. Then there is the evidence of two statements that he made given to an assistant state's attorney involving the one home invasion and the home invasion sexual assault. With that in mind, it's your position that a statement such as this, the state argues that hearsay, it doesn't matter that the rule allows for hearsay. Their position is not about allowing hearsay, allowing this statement of impeachment, recantation, whatever you want to call it. Their position is that you cannot meet the test, that this is so conclusive that it's likely to change the outcome on retrial. Now let's say, for example, that you have agreed that we would use, or if this Court has to analyze it, we don't compare it against evidence at a trial. We would compare it against the evidence presented at the plea proceedings. Is it your position that this statement would be so conclusive, likely to change the outcome, if a fact finder heard what has just been presented? So I think there are several pieces here. So because it's a guilty plea, we don't know everything that the state could present, right? No, I'm just working from the record. That's all. Okay. So it is, nonetheless, a freestanding full claim of factual innocence. And then, on top of that, I would point you to Ortiz, which says you don't have to fully show at this stage that you can succeed with an actual innocence claim at trial, but you have to show that this would inform the finder of fact. And it does, absolutely. It's a full claim of actual innocence. So I think under Ortiz, it does move the needle. No, I think Justice Gordon and I are very familiar with Ortiz. Right. He wrote the opinion, the appellate court opinion. I concurred. It went up to the Supreme Court. I think we're very, you know, familiar with the actual innocence test. My question to you is, based upon this record, there still is a requirement of showing new, and I don't, forget the new, the last requirement, the most important, the one that the Supreme Court has said on numerous occasions, that the most important element is it's so conclusive, likely to change the outcome on retrial. So we take these allegations as true. And the allegations themselves are absolutely conclusive, because the allegations are that not Mr. Koh, but Mr. Benjamin committed that offense. That in and of itself is conclusive. So at this stage, taking these allegations as true, that is conclusive. Well, here's the problem. How do you prove Mr. Benjamin did it? Well, Mr. Koh does not have to, and Mr. Shaw does not have to prove that Mr. Benjamin did it. And we, and we, that is really clear. This is really, I want to say one proceeding at a time, because we're not at the trial yet. We are at the stage where we want to be at the evidentiary hearing, question Mr. Koh about his statements, and bring forth all the evidence that the State may have to reject. We bought that mohawk card. So I think that questions about what exactly there is, Mr. Benjamin, Mr. Koh is not in the police reports. We don't know what's in the police reports. So all of that, I think those would be questions that you could actually ask at an evidentiary hearing, but none of this is in the record right now. Do you think that the statement Mr. Koh made could actually be used as substantive evidence of guilt? Is there any rule of evidence that you think would actually permit any finder of fact to allow a statement of impeachment or recantation as substantive evidence of guilt where there's been no opportunity to cross-examine the person who's deceased? There's actually, I mean, there's no, I'm not aware of any evidentiary rule that would actually allow a statement of impeachment or recantation to be allowed as substantive evidence of guilt of another person, let's say, under any rule, statutory or common law. The only rules we have that allow substantive proof to be admitted in a court of law regarding a statement of another person is only when they were giving a statement of guilt. And when those requirements are met, a fact finder can then, and only then, consider that as substantive proof. There's no rule that would even permit this kind of statement to be used as substantive proof of guilt under any case I've ever read. But maybe I'm wrong. Would you? Well, we have the Chambers and Tenney analysis. So if this is a fundamental, if this goes to Mr. Shaw's ability to put on a full defense under Chambers, and there are, in the Chambers analysis, that he can meet some of these points in the Chambers analysis. This is an outcry directly from the complainant. An outcry? Well, that was the wrong word. This is a statement, a spontaneous statement, directly the day after she made that identification. So it comes a day after she made the identification, she goes to Mr. Cohen and said, oh, I've got the wrong guy. Is that on the record here? That's a spontaneous statement made a day after the? Yes. I thought he said 13 years ago he said he talked to her. Right. I would say this. I don't think under Chambers that the evidence that you're suggesting would be admissible as substantive proof. I think there's a rule that would permit after an evidentiary hearing a court to decide whether that could be admitted. But I'm not certain of your suggestion that that's substantive proof that would actually go before a binder of fact. I think that would be an analysis. And, again, under Warren, I think that's exactly what the court said in Warren. These kinds of determinations, whether this is hearsay that would come in at trial as a determination to be made at the evidentiary hearing, and we would do that Chambers analysis, question Mr. Koh, question the reliability of his statements at that evidentiary hearing. Well, we will give you some time for rebuttal. Do it. Anything else? So if there are no further questions, we would ask that you order an evidentiary hearing. Good morning. Good morning, Your Honors. May it please the Court. Again, my name is John Nowak. I'm Assistant State Attorney here on behalf of the people. The circuit court properly dismissed this post-conviction petition at the second stage. Before I get into the analysis about the actual innocence and why it fails under those standards, let me first address what the court was bringing as an issue, is the fact that this was not a plea just to this one case. It was a plea to two other cases that were similar in many respects. And, again, trying to separate these out is nearly impossible to do, especially given this is nearly 15 years later. Well, that's really, you know, I mean, the real important point here is, is there enough here to move to an evidentiary hearing? And let me ask you, do you agree that the cases at least suggest that you can attack and you can proceed with a post-conviction petition if you challenge the voluntariness of that guilty plea? Yes, Your Honor, and Barnsleyer and cases from that, in that ilk, do say that. But the difference here is, is that the defendant, quite purposefully on appeal, abandoned the claims that he had raised on that particular point in his petition. He is no longer claiming on appeal that his guilty plea was coerced. He is no longer arguing in his appeal that his statements were involuntary and that those were coerced. Those were in his petitions. He had three points. He abandoned those three, those two, and his focus solely on actual innocence. While this court was exchanging with defense counsel, I went back through and was paging through the defendant's opening brief. It's not in there. And that's why it's not addressed in our brief. Well, you do raise immediately this suggestion that the other two issues are gone. Yes. And that it's devoted to actual innocence and there's no real challenge to the voluntariness of the guilty plea. But then again, counsel sort of suggests that in the reply. Raising it, then, for the first time. All right, well. Nevertheless, nevertheless. Nevertheless, we are making an argument. That's part of it, under 341H7. Counsel, reading the statement about Mr. Benjamin, I think it was Mr. Coe. Yes. If that's true, okay, if that's true, does that not suggest that the wrong person is in prison for this crime? Assuming at this stage that it's true. Yeah. And that the victim told Mr. Coe this. That hearsay statement would, she did in that hearsay statement, according to Coe, point the finger at someone else. Yes, that's what he says. And assuming that that is true, that gets into the actual innocence analysis. And the first part of that is, is this newly discovered? Is this something that the defendant could not have discovered with due diligence before he pleaded guilty? And he could have. The notion that this defendant was unaware of the victim's existence, which it has to be how he's approaching it, but he's not aware of this particular witness, which is the victim who said this, he of course knew who it was. And in his opening brief, he said. I'm not following you. My point is, is to be newly discovered, it has to be that the defendant could not have discovered the witness. And the witness here we're talking about is the victim, because she's the one that made the statement. That he was not able to discover this witness and able to interview that witness to hear what she has to say. And you're assuming she would have told him the same way she told Coe. We don't know. Because there is no allegation. There's no argument by the defendant that he made any attempt to interview the victim before she died. He knew of her existence. And that's just it. The fact that he didn't know about Coe, who is here not as a witness, an eyewitness, but only as the vehicle to portray this hearsay statement. The fact that he didn't know about Coe is irrelevant. He knew about the victim, and it's the victim's statement that he wants to get on. Let's assume it's true. I mean, let's assume it's new. For purposes of argument. Assume that the victim's statement is new? Yes. Well, that's what we're talking about. It is. That's why it's so confusing with the hearsay part of this. It's because when was it new? Here's the time frame of when this happened. Defendant is arrested shortly after the incident. He's brought in. The victim identifies him shortly thereafter in the physical lineup. And shortly after that, he gives a handwritten, thoughtful confession to the police and the prosecutor. According to Coe, it is the very next day after the physical lineup that she says to Mr. Coe that, I didn't mean to identify the wrong guy. It's this Benjamin guy. The day after. Again, defendant knew of the victim's existence. He could have discovered this information where she's recanting her identification. He could have discovered that before he pleaded guilty. She made this statement not to Coe after defendant had pleaded guilty. She made this statement to Coe recanting her identification the day after she made the identification. And so that's why we're getting to the point that defendant could have discovered this with due diligence. He could have made the attempt to talk to the witness, talk to the victim. And defendant seems to recognize this, even in the opening brief, that this is a problem. Because his excuse in his opening brief is that the reason why I, defendant, could not have exercised due diligence to talk to the victim and find out directly from her that she recanted, the reason why is because his bond emotion prevented him from approaching the victim. That's in his opening brief is the excuse. Well, of course, he's represented by appointed counsel. Appointed counsel could have approached the victim and found out with due diligence whether she recanted or not. What if counsel didn't care? That would be a claim of ineffective assistance to counsel, which he has not made on that point. He has not made it. Well, it would have to be in a successive petition. It certainly is not one that he raised in his initial petition. And to the extent that he raised ineffectiveness in his initial petition, he abandoned that appeal. If you are the state's attorney and you know that a person is innocent, what is your obligation? If you know that person is innocent, it's to get to the truth, of course, and to not have an innocent person. You know the truth. I'm giving you my hypothetical. You know the man is innocent. You know the case, don't you? Isn't that what states attorneys do? They dismiss cases where there's an individual that they have every reason to believe did not commit a crime. Isn't that what the state's attorney's office does? Yes. Excuse me. Yes, Your Honor, of course, of course. That's what they should do. Yes. And here, what is the evidence of actual innocence here? It is this hearsay statement by Mr. Coe, the grandson of the friend of the victim who has now passed away. Is this double hearsay? Is this hearsay on hearsay? Or what is the proper term for this kind of hearsay? Do you know? Hearsay is fine. This isn't actually like… It's certainly hearsay in one form or another. Well, in Edwards and Sanders, the Supreme Court reviewed a couple of cases involving recantations. Do you remember that? You have to refresh me, Your Honor. Well, in both of those cases, one of them was a successive PC. Maybe they were both successive PCs, but they talk about the actual innocence test. When they review what would normally be called a recantation in both of those cases, they said that those recantations were not so conclusive as to meet the actual innocence test. And that certainly would be the case here. Well, do you call this a recantation? Is this impeachment? What is this? It would be if, in this hypothetical world where, let's say, the victim is still alive. Yes, he's not. Of course, he's not. But it would be impeachment evidence of the victim's physical identification line-up, identification with him in the physical line-up. That would be impeaching her. She would be put in, didn't you? No, you can't do that. She didn't testify. Well, first of all, you're never going to be able to put in anything about her. She's dead. She's dead. So my question to you is, Mr. Nowak, are you aware of anything? We have dying declarations. We have excited utterances. Do we have anything that allows for the substantive admission of a statement of a person who is dead, who didn't testify under oath, who was never prosecuted, that that evidence under federal rules, Illinois evidence rules, any case law, would permit that to be allowed as evidence of substantive evidence? Of the victim's physical identification line-up. Identification in the physical line-up. No, the recantation, her impeaching statement that another person says she gave out of court, saying that he didn't do it, this other person did it. There is no rule that covers that. Well, okay, maybe there is. And maybe counsel has a valid point. I want to ask you about the procedural mechanism here. Do you agree that in the two cases where, well, the one case that I'm thinking of where there was a plea of guilty, I think Justice McDade wrote the decision, and she said that a post-conviction petition could proceed on the basis of an involuntary guilty plea, where the person said that I was forced to plead guilty because a gang member threatened my life. But nothing in that case explains how do we procedurally view this evidence. Do you believe we would view the proceedings that we have here when we would look at this evidence, or what? When looking at this evidence, all we have is the guilty plea hearing. That's the only evidence that was entered in this case because there was no trial. And that's really what is causing the difficulty I think here for all the parties in the court, as to this was a guilty plea. It was a guilty plea where defendant, by pleading guilty, forfeited any sort of constitutional errors or irregularities, aside from an allegation that he was coerced into pleading guilty. Do you agree that it's possible that a person could enter a plea of guilty, even though they're not guilty, and challenge that later? Isn't that sort of a basic notion of fairness and justice, that if someone actually was forced to enter a plea of guilty? Like the case that I just talked about that I think Justice McDade wrote, that if a person was actually forced into a plea of guilty by circumstances that they can't control, that the law shouldn't recognize that we don't want that kind of thing to happen. Absolutely, Your Honor. Absolutely. We do not want, even if someone pleads guilty, if there is later evidence comes out that shows that person was coerced into pleading guilty and was... No, no, no, no. Not coerced. An innocent person pleaded guilty because their lawyer told them you're going to lose the case, and if you go to trial you're going to get this sentence, and if you plead guilty you'll get this sentence. Forget coercion. Voluntary plea. A person says, okay, I didn't do this, and it's killing me to do this, but I'm going to plead guilty. Do you think that's ever happened? To say that it's never happened, I won't go... I don't know if it's happened, but I can say it's never happened. I cannot say that. It certainly theoretically could happen. So if his lawyer is telling him, you better take... I mean, what he says in here, in these papers, is my lawyer told me I better take the plea. In fact, I feel so strongly about it, I'm going to withdraw your counsel if you don't. Maybe that's coercion, maybe it's not. But an innocent person might take a plea, because it's better than the scary alternative of going to trial and getting what you would fear would be a harsher sentence. So what do we do in that situation? So then later he comes forward with evidence, be it as it may, that says, hey, I'm innocent, and you say, well, too bad, you pleaded guilty. And you're not even alleging that it was coerced, because it wasn't coerced. That doesn't strike me as fair, Your Honor. It does not. But that's not our case here. No, but you know what? What's also troubling is that if you read the Alford case, I mean, the Supreme Court recognizes that sometimes guilty pleas will be actually answered by innocent people, or there will be protestations of innocence, and that they will accept a lesser amount of time or whatever. But, you know, it's a troubling issue. But what do you do in that situation? I mean, if you don't have a coerced confession as a vehicle, or a coerced guilty plea as the vehicle to get into an actual innocence claim, how do we handle an actual? Do we just say, too bad, procedurally you're defaulted? Too bad. Or is there a way to say, all things considered, the overriding concern is that an innocent person might be in prison, so let's give them a hearing anyway. Well, of course, always the guiding light in there has to be to ensure that no innocent person is in prison. Absolutely, Your Honor. Okay. But again, that's getting far afield from what happened in this particular case with this particular defendant. He pleaded guilty, and on appeal, he has focused solely on this co-affidavit showing that he is actually innocent. He has abandoned any claim on appeal as to being coerced in the situation you're even describing, Your Honor. But I thought you just told me that even if there was no coercion in a guilty plea, if the person had proof of actual innocence, that would be something the law would not condone, the imprisonment of that person. Of course, Your Honor. Okay. And that's why here, Your Honor, I'm not saying that. But you're not saying that. Your position is opposite to that. Your position is saying, I'm going to throw up a procedural hurdle. I'm going to say, well, you didn't properly allege a coerced guilty plea, so there's nothing to do here. Our brief makes sense. Am I wrong? I mean, what am I missing? That wasn't the entirety of our brief, Your Honor. It was the first part. And because, I mean, we don't want to forfeit that argument on appeal, especially given the particular circumstances of this case. He did plead guilty, and it was found to be voluntary in no way, and we're not abandoning that procedural point. But then we then went on and said, look, putting that aside, let's address the substantive issue, which we do do, Your Honor. No, I agree. I don't care if you're doing your job, counsel. I'm not trying to be critical. But this is the – there are a lot of problems on both sides with this case. This is a tough case. But ultimately, they've got a document that if true, as you've agreed with me, if true, it's a big qualifier, right, but it's what we do in the second stage, then he's innocent. Or at least he's got a pretty good claim that he's innocent. And you would agree that if we gave him a new trial, a vacated guilty plea, you couldn't prove the case? Again, yes, Your Honor, because the problem here is, of course, is that he pleaded guilty. We never had an opportunity to put the victim on a witness stand and have her under oath and cross-examined. That's why this identification of him in the physical lineup falls outside the scope of Section 115-10.4. There's a tension here, isn't there, between this notion that you can put on anything you want in an evidentiary hearing and post-conviction matters, and then at the same time have a standard for a trial that would not permit? I mean, maybe somebody understands something differently than I do, but I still am not aware of any rule that would permit the statement that's proffered in this case. But setting that aside, we still have a test that the U.S. Supreme Court and that our court recognizes regarding claims of actual innocence. And the test is fourfold. And the last test is that the evidence must be so conclusive it's likely to change the outcome. If we use the evidence given at this plea proceeding, I think you've argued in your brief that if you take everything at the plea proceeding, including evidence of other crimes, that is a home invasion that was committed, I think it was subsequent to the offense here, in which he was arrested in a vehicle and then gave two different written statements regarding both offenses, that there's an argument, and certainly you made it, that it would not be so conclusive to change the outcome on retrial. Now, I don't know what the mechanics are because, as I say, this is a case involving a plea of guilty and there really hasn't seemed to be a discussion in any of the cases of what do we look at? What did the trial court look at? She did look at whether or not it met the actual innocence test, didn't she? Yes. I mean, it's a difficult case. There's a lot of issues. As I say, neither of you really talked about the fact that there was a plea of guilty here to two different charges, and I'm not aware of any case like this where we're being asked to look at a challenge to half the plea. Yes, Your Honor, and we did not address that in our brief. It was, again, in response to what we were presented with in the opening brief. And there's nothing in the opening brief about it. There isn't. There's nothing about it in the opening brief. There's never been a suggestion that he is actually claiming that he did not commit this other offense. Right. And, again, down the hypothetical road, that would possibly be litigated as other crimes and evidence that would come in at the trial on this particular case. Now, what's troublesome to me is this. Here's a man who was under the influence of a narcotic, and he doesn't even know what happened that day. He doesn't even know what happened. So his lawyer convinces him to plea guilty, and if this person is innocent, if that affidavit is true, he's innocent. And if we don't have a rule, you see, to follow where he is taken out of jail and this thing is reversed, it means an innocent man is being charged with a crime that he didn't do, you see. So rules sometimes might have to be bent. Don't you agree? It would depend on the facts you hear, Your Honor, and here the rules are here for a reason, because if you look at the facts here, this, I am not, let me leave you with this. As far as the newly discovered point, there is, I am not aware of any case where a hearsay statement of a victim recanting an identification was considered to be newly discovered evidence for an actual innocence claim. Not yet. Not yet. And it certainly hasn't, I am not aware of it, and defense counsel certainly hasn't cited the one. A hearsay statement of a victim recanting, that being somehow newly discovered. How soon after the arrest was he tried? Do you know? It appears that he was, the identification occurred in the lineup, I believe it was December 22nd, 23rd of 1989. It was, it was about two and a half years later. It was then, it was in 1999 in December, and he pleaded guilty in March of 2002. My other question is, how soon after this crime did the victim die? Do you know that? I do not know that, Your Honor. Well, it does appear in the record that she died shortly before the plea. But everybody knew that she was, before the guilty plea, or maybe it's not that clear, but at the time that he actually pled guilty, two and a half years down the road, she was actually deceased. She was already deceased at that point, according to, right, I saw that reference in Defendant Survivor. He did cite the record of that. My only point is, you know, it would obviously be very hard to discover this information if she were six feet underground. I mean, we don't know how long she was available to be interviewed. Certainly, Your Honor. And based, she, it doesn't. Mr. Coe thought she was alive when he prepared his affidavit. He did. And he said that she would testify and back him up 100%. But the defendant acknowledged in court, you know, that he knew that she had died and he was very sorry that he couldn't apologize to her for what he had done. Now, the week before, he said that he had a controlled substance problem. That's what he described. Actually, you know, and you know what, as long as we're on the subject, does your office ever take a policy or a position that when somebody has a position like this where one week they say, you know, I'm not pleading guilty to that and they made me look terrible and I didn't want to plead guilty, then the next week he comes back in, there's a full-blown proceeding and the judge, you know, the judge made a decision and the proceeding that occurred the following week is not the same as the one that happened before. But isn't it possible for the office to begin a position with taking a stance against cases where there is this situation that arises, where an individual suggests that, you know, it happens in the middle of a plea and usually maybe down the road there will be a plea and in those cases the judge will be very particular about his or her inquiries when that plea takes place to make sure that it is a voluntary plea. So isn't that something that both sides should be looking into, but particularly the state because you have to defend this case now 15 years later. But these situations arise where defendants say that, you know, they're in the middle of the plea and they say, I don't want to do this. Does the state's attorney's office have to ever capitulate to a plea of guilty later? I guess they do. I guess the judge has to, you know, if the judge believes it's a voluntary plea, I don't know. But this case raises concerns about the acceptance of a guilty plea, of an individual who for whatever reason one week doesn't want to plead and then the next week they do want to plead. The judge does everything in their power to try to ensure that there were no threats, there was no force. Are you pleading guilty because you, you know, committed these offenses? Now that's not something they always say, but there are judges that do that. And here, Your Honor, I share your concern. Here, going back to the facts of this case, the fact that the defendant was aware when he pleaded guilty that the victim had already died actually bolsters the voluntariness of his plea because if he had gone to trial, she's already, as we've already discussed, the victim's identification, she's not, she's deceased, she can't come into court and testify to the identification. No, you can't even present that evidence. Right. And the fact that he then still, despite that now procedural hurdle for the state to overcome, he still felt that he, for, to plead guilty, even though he knew that she was now deceased and wouldn't be able to testify against him. That just goes to bolster the voluntariness here. And his acceptance of the responsibility of what he did to this 76-year-old woman in her home. And the fact that he decides to finally, after initial regrets, to accept responsibility and plead guilty, we shouldn't have any questions in these particular facts, Your Honor. Well, you know what? I want to say that I'm certain that we will want some further briefing on this issue from both sides because neither side has even discussed the idea about, this is not like a case that's recorded where someone is attacking part of his guilty plea, attacking part of it. He did not attack the other part. There's nothing in the record. There's nothing in the post-conviction petition that actually suggests that he's actually attacking his plea in its entirety. So, you know, we'll formulate some kind of brief for that issue. Thank you, Your Honors. In conclusion, we ask this Court, for the reasons in our brief and for the reasons stated by the Circuit Court, to affirm the dismissal of the second stage post-conviction petition. Thank you. Ms. Seery? Brief, Your Honors. I wanted to touch on two issues because you were concerned with what is the procedure here and you mentioned Sanders. And I think Sanders is a good case to think about because there the issue was recantation testimony and the evaluation of recantation testimony. And the Court referred to the language in Edwards that said, well, it needs to be reliable evidence. And then the reliability of that evidence, and Sanders acknowledges this, is to be determined at an evidentiary. What did Sanders do with the recantation testimony? Well, they didn't reach that issue because, in the end, they found that the test hadn't been met. They found that the evidence was not so conclusive. But not on the reliability of the statement. Absolutely not. They did not evaluate the reliability. I agree. They said how recantation testimony is suspect, but they actually went on, they looked at the evidence at trial, they looked at the recantation, they said it cannot meet the test for actual innocence. They did it in Edwards and they did it in Sanders. Right. So courts have to make that determination. And you're absolutely right. We don't look at its reliability. But conclusiveness has a meaning in the law. It does. Right. This is also very difficult because, as I said, we don't have a trial. So, nonetheless, I think that Sanders does give sort of a road map that this points us to an evidentiary. And then the second point I wanted to make, and I wanted to cite this case to you guys earlier, you were concerned with what happens when an innocent person pleads guilty. And in the Barnsleder decision, they cite a Texas case which says whenever a person who has pled guilty challenges his guilt, says he's really innocent, then that in and of itself challenges the guilty plea. It's difficult to imagine how somebody wouldn't at the same time challenge the guilty plea if they're saying they're innocent of the charges that they pled guilty to. It's really part and parcel of that one claim. Counsel, I understand that point. Here's the problem, though. If we, you know, keep going back to this, and I think it referred to as a free shot on goal because that's really kind of what it is here. I don't mean to be glib. But the final prong of the actual innocence test, which the court has said is the most important and it's usually the hardest one to overcome for a petitioner, talks about comparing the newly discovered evidence, even if it is newly discovered, even if it's non-material and it's non-cumulative, against the trial evidence. We obviously don't have that here. I suppose we have a proffer at the time of the guilty plea. So we've got a summary of what the evidence would have said. But we don't have any credibility findings or anything. So you have a nice, shiny affidavit full of great stuff about how innocent your client is, and the state really has kind of been hogtied from really responding. And that's probably one of the reasons why some courts have cast doubt on whether someone can even assert actual innocence after a guilty plea. If we say that they can, and if we say that we're going to compare this co-affidavit against basically nothing on the other side, doesn't everybody who took a guilty plea in prison right now start filing actual innocence petitions? Just find someone to write an affidavit and it will be compared against nothing? And they'll say, oh, under this case, under Papal versus Shaw, you've got to give me a third stage evidentiary here. Why shouldn't we be concerned about that happening? Well, I think the circumstances of this case are peculiar because we have the decedent here who died in between these two guilty plea attempts. I think that's actually when the record suggests that she passed away. But the state is not really in a different position. She died earlier in that week between when he first wouldn't plead and then he said, I may or may not have done it? Because there's nothing to suggest that she was dead at that point, whereas a week later they say, now she has passed away. But at any rate, but in this particular case, there isn't really a difference for the state now than there would have been back then. But I think I'm not fully responding to your question. I mean, someone who's been in prison for 17 years who pleaded guilty could now come in, get someone to write an affidavit for him and say, well, the state never had to try me, so the state never really put the clip on. And a lot of the witnesses 17 years later are going to be gone. I mean, you know, it's a little concerning about what that could lead to. Well, I guess I would say that it's not that my client had somebody write an affidavit for him. Somebody approached him and said, I have information about your case. But you take my point. I take your point. So should I be worried about that sort of floodgate scenario? I don't think this is a floodgate scenario. This is a very specific case with specific facts where somebody came forward and gave my client information that he didn't have previously. And in fairness to him, you're not sending it back for a new trial. All you're saying is let's look at the truthfulness of these claims. It's not like there's not a floodgate trial. We're not going to operate in a vacuum here. We're going to use the evidence that was presented at the plea proceedings to make our determination. Right. I mean, isn't that the fair way to do it, that we would actually look at what the state presented at the plea proceedings to determine whether or not you've met the test under Sanders, Edwards, Washington? If we go along with your actual innocence claim, don't we actually have to compare it to something? And wouldn't it be what the state has already presented at a hearing? But the claims in the affidavit are not rebutted by the factual basis that the state brought forth. That's another issue entirely. Anyone, I mean, that's what the Supreme Court did in Sanders. They said the recantation was actually rebutted by the record of trial proceedings. They did say that. So when somebody says they've entered a plea of guilty and the state offers the evidence that he was identified by this person and this person and he was arrested in her car and then he gave two different written statements to an assistant state's attorney in which he admitted his guilt, yes, they said that kind of recantation is rebutted. So I don't know. There's so many issues. But you do concede, at least you said earlier, that we would actually compare what the state has presented at the proceedings to determine whether or not there's even a, you know, a showing of a substantial denial of constitutional rights via the equitable innocence claim. That's the evidence we have. And we have a separate claim with entirely separate evidence that has never been brought forth. And that's not part of those plea proceedings. Well, we appreciate the, if you don't have anything further, and we will, I believe, ask the attorneys to perhaps address some of these other issues that haven't really been part of the calculus so far. All right. Thank you, both of you, for your arguments. Thank you.